# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SCOTT J. KARGMAN**, | Case No. 3:26-cv-985-SI |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR SUMMARY JUDGMENT** |
| **PNC BANK, N.A.**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

This case arose after Defendant PNC Bank, N.A. ("PNC") initiated nonjudicial foreclosure proceedings when Plaintiff Scott J. Kargman stopped making his mortgage payments as of October 1, 2025. Plaintiff, representing himself, originally filed a quiet title action against PNC Bank, N.A. ("PNC") in Washington County Circuit Court, disputing the chain of title on the loan on his residence. PNC removed the case to this federal District Court.

The foreclosure of Plaintiff's home is scheduled for August 4, 2026. Plaintiff, representing himself, has filed a Motion for Temporary Restraining order ("TRO") to enjoin that foreclosure. Defendant has filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff fails to state a facially plausible claim for relief and fails to comply with Rule 8 of the Federal Rules of Civil Procedure.

After an initial review of the case filings, in which Defendant first identified that PNC's rights arose through a "merger" and then as an "assignee," the Court requested that PNC answer

PAGE 1 – ORDER

certain questions regarding its role and authority. PNC filed its response, providing a new explanation with supporting evidence. For the reasons explained below, the Court grants PNC's motion to dismiss, and denies Plaintiff's motion for TRO.

## A. Background

On April 28, 2004, Plaintiff purchased the subject property, Unit No. 163, Orchard Hill Condominium Stage 3, located at 7181 SW Sagert St., Unit 101, Tualatin, OR 97062. On June 3 2009, he borrowed $164,000 from Bank of America, N.A., signing a Note, in which he promised to pay his monthly payments or face late penalties and default consequences. ECF 29 at 55-56. The Note states that the lender may transfer the Note. PNC currently has the original Note. Decl. of Dana Figures ("Figures Decl."), ¶ 7 (ECF 29).

Plaintiff also signed a Deed of Trust securing his $164,000 loan, recorded June 10, 2009, as Instrument No. 2009-052551 in the Washington County records. ECF 11-2. Bank of America was the lender and beneficiary. On September 17, 2013, Bank of America assigned its beneficial interest in the Deed of Trust to Everbank, recorded as Instrument No. 2013-086521. TIAA purchased Everbank in 2017. TIAA assigned its rights in the Deed of Trust to PNC on July 7, 2023, recorded as Instrument No. 2023-028438.

On May 28, 2021, PNC purchased the loan servicing rights for a portfolio of TIAA's mortgage loans, which were to be transferred to PNC in "phases." Figures Decl. ¶¶ 3-4. The servicing of Plaintiff's loan was transferred from TIAA to PNC on April 1, 2022. *Id.* ¶ 3; ECF 29 at 6-18. PNC sent Plaintiff a "welcome" letter dated March 23, 2022, notifying Plaintiff of the change in servicer from TIAA to PNC as of April 1, 2022. ECF 29 at 10-13.

Plaintiff's loan was backed by Fannie Mae. *See, e.g.*, Figures Decl. ¶ 7. Fannie Mae's Loan Servicing Guide at the time authorized PNC as servicer to enter into loan modification agreements as part of its servicing duties. *See* ECF 28 at 5; ECF 29 at 83.

PAGE 2 – ORDER

PNC entered into a Loan Modification Agreement with Plaintiff, signed in September 2022 but with an effective date of February 14, 2023, recorded as Instrument No. 2023-005695. ECF 11-4. Under this Agreement, among other things, Plaintiff's monthly payment and interest rate were reduced. Fannie Mae approved this loan modification agreement on October 20, 2022. ECF 29 at 69-71. The request for approval had been pending at Fannie Mae since May 1, 2022. *Id.* at 72-73. The agreement required that Plaintiff make three trial payments before the agreement could go into effect, which likely explains the delay in recording the agreement and its effective date.

Plaintiff stopped making his mortgage payments on October 1, 2025. On March 20, 2026, PNC issued a Notice of Default and Election to Sell, recorded as Instrument No. 2026-013500. ECF 11-6. This notice was posted on the property on March 30, 2026. 2d Am. Compl. ¶ 5. The notice informed Plaintiff that he was delinquent in his loan and escrow payments from October 1, 2025 through March 1, 2026, plus late fees and other costs, for a total default of $4,848.98. PNC explained that as a result of this default, the full amount remaining on Plaintiff's loan, $155,953.11, was immediately due and owing, and the beneficiary (PNC) had elected to sell. The notice stated that a foreclosure is set for August 4, 2026, at 1:00 PM, on the Washington County Courthouse steps. This litigation followed.

Plaintiff filed his original complaint to quiet title in state court (title his "Amended Complaint") on April 2, 2026, alleging fraud and backdating of documents, naming multiple defendants, and requesting $155,000 in compensatory damages plus punitive damages. ECF 1-2 at 3-5. On May 10, 2026, Plaintiff filed a "Second Amended Complaint to Quiet Title" in state court.[1] ECF 1-1 at 17-18. This complaint names only PNC as the defendant, and alleges that

---

[1] PNC discusses this as Plaintiff's "First Amended Complaint" because it was only the second complaint *filed* by Plaintiff, and thus technically the first amended complaint filed by

PAGE 3 – ORDER

Plaintiff has been the record owner of the property since 2004 and further alleges that PNC relies on "documents recorded in 2021 and 2023" that "contain backdated information and were recorded many years after [sic]." *Id.* at 17. It asserts that PNC has no valid lien and requests that the Court declare Plaintiff the sole owner of the property free and clear of all liens, and declare PNC's mortgage and Deed of Trust null and void. *Id.* at 17-18.

On May 26, 2026, Plaintiff filed a motion to remand this case to state court. ECF 7. On June 8, 2026, Defendant filed its motion to dismiss. ECF 10. On July 18, 2026, in response to Defendant's motion to dismiss, Plaintiff attempted to file a Third Amended Complaint. ECF 18. Plaintiff also filed his motion for TRO. ECF 16.

On July 14, 2026, the Court denied Plaintiff's motion to remand. ECF 23. The Court also rejected Plaintiff's attempted Third Amended Complaint, explaining that Plaintiff needed to allege facts supporting his claims and could not simply rely on conclusory allegations. The Court allowed Plaintiff to file a Corrected Third Amended Complaint. The Court also directed PNC to answer certain questions regarding its role and authority.

On July 27, 2026, PNC responded to the Court's questions. ECF 27-29. Over the next few days, Plaintiff filed additional documents in support of his motion for TRO. ECF 30, 34.[2] He

---

Plaintiff. The documents submitted to the Court by PNC do include a "First Amended Complaint" drafted by Plaintiff on April 15, 2026, but that complaint does not appear to have been filed in state court. The Court references Plaintiff's Second Amended Complaint as it is captioned and as Plaintiff does. PNC's referencing this complaint as the First Amended Complaint caused confusion.

[2] Plaintiff filed a document entitled "Emergency Motion to Extend Temporary Restraining Order," in which Plaintiff appears to believe that a TRO is in place and he seeks to extend that TRO through the duration of this litigation. In this motion he repeats the contentions from his Corrected Third Amended Complaint with additional argument, which are arguments not contained in his original motion for TRO, which was based on his Second Amended Complaint. No TRO has been issued in this case, and thus Plaintiff cannot move to extend the duration of a nonexistent TRO. Plaintiff's original motion for TRO remains pending before the Court, and Plaintiff had until July 30, 2026, to file his reply in support of that motion. Because

also filed his Corrected Third Amended Complaint. ECF 33. In this complaint, Plaintiff alleges that he purchased his home in 2004 for $135,000 using an "80/20" loan, with a second mortgage in the amount of $25,900 that was a "balloon note intended to be amortized." He asserts that in 2007, while grieving and at the wake for his brother, an agent for PNC's predecessor-in-interest obtained Plaintiff's "printed name on purported refinance documents." Plaintiff contends that the 2007 loan is voidable and unconscionable because he did not have the capacity to enter into the contract due to his grief.

Plaintiff further alleges that there is an accounting discrepancy between PNC and his personal bank, Unitus, and that they show different balances due. He also alleges that PNC "rel[ies] on a 2009 JP Morgan 'consolidation' stamp to justify a $155,000.00 payoff demand—a figure that exceeds the original purchase price of the home and fails to account for approximately twenty years of payments, in violation of 12 U.S.C. § 2605." Plaintiff requests equitable relief and $750,000 in money damages.

## B. Motion to Dismiss

### 1. Legal Standard

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

---

Plaintiff's most recent filing contains some new argument, the Court ignores Plaintiff's label and, liberally construing Plaintiff's filing, accepts it as his reply. *See, e.g.*, *Castro v. United States*, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. They may do so in order to avoid an unnecessary dismissal, avoid inappropriately stringent application of formal labeling requirements or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." (citations omitted)).

Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted)

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 2. Analysis

Plaintiff's Second Amended Complaint alleges that PNC's misconduct arises from backdating documents recorded in 2021 and 2023. On May 12, 2026, shortly after filing his Second Amended Complaint, Plaintiff filed a Motion for Summary Judgment, ECF 1-1 at 19-22. This motion essentially mirrors his Second Amended Complaint, except it attaches an exhibit that purports to show the alleged backdating from a 2021 document. PNC's filings in response to the TRO include the recorded documents from 2023. The Court considers these documents incorporated by reference into the Second Amended Complaint.

Plaintiff's Third Amended Complaint does not attach any documents. It references, however, his 2004 loan for $25,900, his 2007 loan, and the purported discrepancy between the accounts of Unitus and PNC. In Plaintiff and PNC's filings relating to the TRO are the documents underlying these allegations. The Court thus considers those documents as incorporated by reference.

PNC moved to dismiss Plaintiff's Second Amended Complaint, the then-currently operative complaint. Plaintiff responded by filing the Corrected Third Amended Complaint. As discussed below, the Court finds that the nearly all of the allegations in the Corrected Third Amended Complaint do not apply to the loan at issue in the underlying foreclosure. To liberally construe the filings of Plaintiff, give him the benefit of any doubt, and fully explore potential claims for futility purposes, the Court will consider the allegations in both the Second Amended Complaint and the Corrected Third Amended Complaint, and the documents incorporated by reference, when analyzing PNC's motion to dismiss.

PNC raises two arguments under Rule 12(b)(6). First, PNC argues that Plaintiff cannot state a claim for a quiet title action because he is in default and has not alleged that he is "ready, willing, and able to tender the full amount owed on the loan." *Rigor v. Fremont Inv. &*

*Loan*, 2012 WL 913631, at *1 (D Or Feb. 13, 2012). Second, PNC argues that Plaintiff's complaint fails under Rule 8 because Plaintiff fails to allege sufficient facts to show he is entitled to relief or concisely allege the legal basis for his claim. PNC argues that Plaintiff alleges only a few conclusory statements, which are insufficient. Because the Court agrees with PNC's more general argument under Rule 8, the Court declines to reach PNC's first argument. The Court next discusses whether Plaintiff sufficiently alleged claims in either of his complaints.

### a.  Second Amended Complaint

As noted, Plaintiff's Second Amended Complaint relies on allegations of "backdating" in documents recorded in 2021 and 2023. Plaintiff, however, alleges no facts to support his allegation of backdating by PNC. Nor does he allege facts showing any other basis on which to assert a problem with the chain of title or PNC's authority to foreclose on Plaintiff's property. Reviewing the documents incorporated by reference also does not help Plaintiff's allegations.

In Plaintiff's Motion for Summary Judgment, he attaches one document from 2021 that he contends shows backdating. It is an assignment from PNC to US Mortgage Resolution Trust of a 2007 Deed of Trust, and describes the details of the underlying deed.[3] This deed was dated May 25, 2007, in the amount of $20,375.00, recorded as Instrument No. 2007-059995, with Pacific NW Title as Trustee for National City Bank. This document does not involve the loan at issue in this case, which involves the 2009 Deed of Trust recorded as Instrument No. 2009-052551, in the amount of $164,000.

The 2021 assignment also does not show backdating. It is a later and routine assignment of an earlier-recorded Deed of Trust that recites the underlying details of the original Deed of

---

[3] PNC apparently assigned this Deed of Trust during the time PNC was engaging with Plaintiff's account before the Loan Modification Agreement

PAGE 8 – ORDER

Trust. Such an assignment can happen at any time during the life span of a Deed of Trust and the details it describes will necessarily be from an earlier time. That is the situation with the document Plaintiff focuses on—it is a 2021 assignment of a 2007 Deed of Trust. But there is no "backdating" or anything nefarious about such a document on its face.

The "2023" documents referenced by Plaintiff in his Second Amended Complaint appear to be the recorded assignment of the 2009 Deed of Trust from TIAA to PNC, and the recorded Loan Modification Agreement. Plaintiff may misunderstand the 2023 recording including recitals of a 2009 document like he did with the 2021 recording of the 2007 document, but that is not "backdating." Similarly, absent facts showing otherwise, the Loan Modification Agreement does not appear to have any "backdating." It contained a requirement that Plaintiff make three months' payment before it could go into effect, and it was approved by Fannie May in October, 2022. Thus the effective and recording date in February 2023 is unsurprising (following after the three trial payments in November, December, and January). Regardless, Plaintiff alleges no facts about these or any other 2023 documents sufficient to support his claim.

### b. Corrected Third Amended Complaint

Plaintiff's primary allegation is that he did not have the capacity to sign the 2007 refinance documents. That loan, however, was for $163,200.00, for which Mortgage Express, LLC was the lender. ECF 30 at 2. It was recorded as Instrument No. 2007-059994. It is not the loan at issue in this case. This case involves the 2009 loan for $164,000.00, for which Bank of America was the original lender.[4] That the 2009 loan likely extinguished the 2007 loan does not make the 2009 lender the *successor* to the 2007 lender. At this point, Plaintiff's allegations of

---

[4] It appears that the 2009 loan was a refinance that paid off the 2007 mortgage.

misconduct based on his purported lack of capacity to enter into the 2007 loan are irrelevant because Plaintiff entered into a new and different loan in 2009.

Plaintiff next alleges claims regarding accounting discrepancies. In Plaintiff's Declaration supporting his TRO, he attaches documents he contends shows "accounting discrepancies and documentation defects." He attaches documents relating to the 2007 Deed of Trust that PNC assigned in 2021. First he attaches the "Line of Credit Trust Deed" in the amount of $20,375. ECF 30 at 4. National City Bank was the lender. Plaintiff also attaches an installment statement on this home equity line of credit from National City Bank from August 6, 2009. *Id.* at 3. Again, none of these documents from his 2007 home equity line of credit are relevant to Plaintiff's foreclosure, which stems from the 2009 mortgage.

Plaintiff also alleges a banking discrepancy between PNC and Unitus. In his TRO filing, he attaches two side-by-side screenshots of what appears to be two accounts with two different outstanding balances. ECF 30 at 6. His explanation of this document is that his Unitus bank application transferred his PNC mortgage to the Unitus app, but backdated to 2004, and he argues that the two different balances mean something is amiss. This document is illegible and unverified and it is unknown what the two accounts represent. Presuming these screenshots show two different balances due on his mortgage at the same time, he admits that a "third party app" transferred data and made a mistake with the date, so it is unreliable evidence that there is any error on PNC's part in reporting two different balances. And even if PNC did have a balance reporting error at some unknown time, whether through its online department or elsewhere, that would not be evidence that implicates the chain of title or PNC's authority to foreclose on Plaintiff's property.

Plaintiff alleges that the approximately $155,000 payoff amount cannot be accurate because it exceeds his original purchase amount of $135,000.00. But Plaintiff *twice* refinanced

PAGE 10 – ORDER

after that original loan. The first time in 2007 for $163,200.00 and the second in 2009 for $164,000.00. There is nothing suspicious about a $155,000 payoff following a $164,000 loan.

Finally, Plaintiff alleges that PNC relies on a "2009 JP Morgan 'consolidation' stamp." The Corrected Third Amended Complaint provides no further allegations relating to that "stamp" and it is unclear to what Plaintiff is referencing. In his reply in support of his motion for TRO, Plaintiff states that he "has identified irregularities in the corporate assignment stamp dated 2009, which he contends was altered or improperly affixed, calling into question the current beneficiary's and trustee's authority to conduct a nonjudicial foreclosure sale under ORS Chapter 86." Plaintiff, however, has not alleged facts describing the document on which this "corporate assignment stamp dated 2009" is allegedly affixed, nor has he identified any purported irregularities with the stamp itself. His allegations, statements, and exhibits have all related to documents from 2007, 2021, and 2023. Plaintiff's allegation regarding the 2009 "stamp" is insufficient to support a claim.

### c. Conclusion

Plaintiff must allege *facts* showing why there is a problem with his chain of title or why PNC does not have the authority to foreclose on Plaintiff's property. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Starr*, 652 F.3d at 1216. Simply alleging that PNC has engaged in fraud, backdating, accounting irregularities, or other documentary irregularities is insufficient. *See Iqbal*, 556 U.S. at 678. Plaintiff must identify the documents and explain why he believes they are problematic, without simply labeling them as such. Plaintiff's Second Amended Complaint and Corrected Third Amended Complaint both fails to do so.[5]

---

[5] The Court requested further information to understand the chain of events by which PNC gained authority to sign the Loan Modification Agreement *before* TIAA assigned its rights under the Deed of Trust to PNC. PNC, however, adequately explained and provided documentation showing that it bought the loan servicing rights from TIAA before the Loan

PAGE 11 – ORDER

The Court explained to Plaintiff that he needed to allege facts supporting his allegations, and provided Plaintiff with the opportunity to file a Corrected Third Amended Complaint. ECF 23. Plaintiff was still unable to state a claim. Even considering his Second Amended Complaint, his filings and exhibits in support of his TRO, and the exhibits submitted by PNC in opposition to the TRO, the Court does not find any basis on which Plaintiff plausibly could assert a claim. Accordingly, the Court finds further amendment would be futile and dismisses this case with prejudice. *See, e.g.*, *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile.").

## C. Motion for Temporary Restraining Order and Motion for Summary Judgment

Because the Court has dismissed this case, the Court denies as moot Plaintiff's pending motion for summary judgment and for TRO.

## D. Conclusion

The Court GRANTS Defendant's Motion to Dismiss, ECF 10. The Court dismisses this case with prejudice. The Court DENIES AS MOOT Plaintiff's Motion for Temporary Restraining Order, ECF 16, and Motion for Summary Judgment, ECF 1-1.

**IT IS SO ORDERED.**

DATED this 31st day of July, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

Modification Agreement. Thus, PNC had the authority to enter into that agreement. And there is no genuine dispute that PNC now has the rights under the 2009 Deed of Trust, assigned to it in 2023.

PAGE 12 – ORDER